## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Richard Norris ("Norris" or "Plaintiff") and Defendants, Daniel Dillon, Nightingale Ventures, Ltd., and Swan Lake Event Center, LLC (collectively "Defendants") (Plaintiff and Defendants collectively referred to as the "Parties") enter into this Settlement Agreement and Release (the "Agreement").  In consideration of the mutual promises set forth below, Plaintiff and Defendants agree as follows:

1. ***Plaintiff's Right to Review this Agreement and Consult a Lawyer***.  Plaintiff has the right to review this Agreement and to consult a lawyer of his own choice before signing it.  If Plaintiff has signed this Agreement, it is only because he has read and understood all of it, and because he has already consulted a lawyer if he wanted to.  Plaintiff agrees that he is entering into this Agreement voluntarily and without any coercion from anyone.

2. ***Judicial Approval***.  The Parties are entering into this Agreement on condition that it is approved in its entirety by the United States District Court for the Southern District of Ohio ("Court").  The Parties agree that they will cooperate and take all steps necessary and appropriate to obtain approval of the settlement, to effectuate its terms, and to dismiss the action with prejudice.  The Parties will jointly file a written request with the Court for approval of the settlement set forth in this Agreement.  The Parties shall work together to obtain the Court's approval of this settlement.  The Parties understand that the approval process may require them to furnish and sign additional documents, travel to Columbus, Ohio for court appearances, give written and/or oral testimony to the Court, and engage in other similar activities.  The Parties shall neither request nor receive any additional consideration for engaging in such activities beyond that which is already stated in this Agreement.  If for any reason the Court declines or otherwise fails to approve this Agreement as written, then this Agreement shall be null and void and of no legal effect and the Parties shall not attempt to introduce it into evidence in any legal proceeding for any purpose.

3. ***Plaintiff's Rights Under the Older Workers Benefit Protection Act***.  Plaintiff acknowledges and agrees that:

    a. He knows that he is specifically waiving rights and claims under the Age Discrimination in Employment Act, as amended, as well as under other laws and statutes.

    b. This Agreement has been written in understandable English.

    c. This release does not include claims that arise after Plaintiff signs this Agreement.

    d. Plaintiff is represented by legal counsel and has consulted with a lawyer of his choice before making a decision to sign this Agreement.

    e. Defendants gave Plaintiff twenty-one (21) calendar days to think about this Agreement before signing.  If Plaintiff signed sooner, it is because he chose voluntarily to give up his right to think about this Agreement for the full twenty-one (21) days.

Case: 2:19-cv-05653-SDM-CMV Doc #: 9-1 Filed: 04/27/20 Page: 2 of 7  PAGEID #: 70

**Settlement Agreement and General Release**
**Richard Norris and Daniel Dillon/Nightingale Ventures, Ltd./Swan Lake Event Center, LLC**
**Page 2 of 7**

    f.    During the first seven (7) calendar days after Plaintiff signs this Agreement, he has the right to revoke it. To revoke, Plaintiff must deliver separately a document to Drew C. Piersall, Counsel for Defendants (by email, in person, or by certified, registered, or overnight mail) that says, in effect, "*I revoke my Agreement with Defendants.*" Mr. Piersall's address is: Zashin & Rich, 17 South High Street, Suite 900, Columbus, Ohio 43215, and his email address is dcp@zrlaw.com. If Plaintiff does not revoke this Agreement during the seven-day revocation period, then this Agreement will take effect on the eighth calendar day after Plaintiff signs this Agreement.

**4.** *Defendants' Payment to Plaintiff*. In consideration of the terms and conditions of this Agreement, Defendants agree to pay Plaintiff the total sum of Thirty-Two Thousand Five-Hundred Dollars ($32,500.00), payable as follows:

- A check for Nine-Thousand Five Hundred Forty-Four Dollars and Zero Cents ($9,544.00), minus all applicable withholdings, made payable to "Richard Norris." This sum shall be allocated to settle allegations of lost wages under the federal Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) and any comparable Ohio wage and hour statutes. Plaintiff will be issued a Form W-2 for this payment.

- A check for Nine-Thousand Five Hundred Forty-Four Dollars and Zero Cents ($9,544.00) made payable to "Richard Norris." This sum shall be allocated to settle allegations of non-economic damages, including alleged emotional distress, related to Plaintiff's retaliation claim brought under the federal Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*). Plaintiff will be issued a Form W-2 for this payment. Plaintiff will be issued a Form 1099 for this payment.

- A check for Thirteen-Thousand Four Hundred Twelve Dollars and Zero Cents ($13,412.00) made payable to "Mansell Law, LLC" for allegations of attorneys' fees and costs. Mansell Law, LLC will be issued a Form 1099 for this payment.

These payments shall be sent to Mansell Law, LLC, 1457 South High Street, Columbus, Ohio 43207, within twenty (20) calendar days after Defendants' counsel receives the Agreement executed by Plaintiff or within twenty (20) calendar days after the Court enters an Order granting approval of this settlement and Agreement or within twenty (20) calendar days after the Defendants' attorney receives W-9 Forms for Plaintiff and Mansell Law, LLC, whichever is later. Plaintiff understands that the Defendants are offering to pay him this money only in exchange for the promises he makes in this Agreement.

Other than the employer required portion of W-2 taxes or other taxes the Defendants may owe on the money described above, Plaintiff is solely responsible for the payment of any taxes he owes associated with the money described above, and hereby agrees to indemnify and hold harmless the Defendants for any and all claims, demands, deficiencies, fines, penalties, levies,

Case: 2:19-cv-05653-SDM-CMV Doc #: 9-1 Filed: 04/27/20 Page: 3 of 7  PAGEID #: 71

**Settlement Agreement and General Release**
**Richard Norris and Daniel Dillon/Nightingale Ventures, Ltd./Swan Lake Event Center, LLC**
**Page 3 of 7**

assessments, executions, garnishments, judgments, losses, costs or recoveries, including, but not limited to, attorneys' fees and litigation expenses, incurred by the Defendants relating in any way to taxes owed by Plaintiff on the money described above.  Plaintiff waives the right to claim post-settlement interest.

5.      *Mutual Release of Claims*.  Plaintiff releases the Defendants and all of their past, present, and future owners, parent entities, divisions, affiliates, related entities, properties, subsidiaries, predecessor entities, investors, insurers, employees, respective officers, directors, board members, managers, attorneys, agents, representatives, predecessors, successors, assigns, and employee benefit plans and programs and their administrators and fiduciaries (collectively the "Releasees") from all known or unknown claims, causes of action, and liabilities, regardless of their kind, arising at any time prior to the moment Plaintiff signs this Agreement.

Plaintiff understands that this release includes, but is not limited to, the following subject matters: any claimed liability for wages, commissions, bonuses, employment benefits, attorneys' fees, or damages of any kind whatsoever; any claim arising out of any contract, express or implied; any claim arising from an alleged breach of the covenant of good faith and fair dealing, express or implied; any tort claim; any claim of wrongful or constructive discharge or violation of public policy; and any claim arising under any federal, state, or local statute or ordinance, including but not limited to: the Fair Labor Standards Act (29 U.S.C. § 201 et seq.); the National Labor Relations Act, as amended (29 U.S.C. § 141 et seq. and 29 U.S.C. §151 et seq.); Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991 (42 U.S.C. § 2000e et seq.); Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. § 1001 et seq.); the Immigration Reform and Control Act of 1986 (8 U.S.C. § 1101 et seq.); the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), as amended (42 U.S.C. § 12101 et seq.); the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefit Protection Act (29 U.S.C. § 621 et seq.); the Family and Medical Leave Act, as amended (29 U.S.C. § 2601 et seq.); the Worker Adjustment and Retraining Notification Act of 1988 (29 U.S.C. § 2101 et seq.); the Sarbanes-Oxley Act (18 U.S.C. § 1514A et seq.); and any other statutory claim for discrimination, workplace harassment, or retaliation.  This release does not include any claim, cause of action, or liability arising out of acts or occurrences that take place after Plaintiff signs this Agreement.

Plaintiff understands that the release he is giving includes claims that he does not have knowledge of at this time.  Plaintiff also understands that by signing this Agreement, he gives up his right to sue or pursue any claim or lawsuit against the Defendants or any of the other Releasees for anything that occurred prior to the date he signs this Agreement.  Nothing in this Agreement shall be construed to impair Plaintiff's ability to bring a lawsuit to enforce this Agreement.

Likewise, the Defendants release the Plaintiff from all known or unknown claims, causes of action, and liabilities, regardless of their kind, arising at any time prior to the moment Defendants sign this Agreement.

**Settlement Agreement and General Release**
**Richard Norris and Daniel Dillon/Nightingale Ventures, Ltd./Swan Lake Event Center, LLC**
**Page 4 of 7**

6. *Plaintiff Will Not Seek Employment with the Defendants*. Plaintiff agrees not to seek employment with the Defendants, or with any entity owned or operated by Daniel Dillon at the time this Agreement is executed without a waiver. If Plaintiff breaks this promise, then the Defendants may deny Plaintiff employment based on this Agreement. However, should the Defendants acquire or become affiliated with any entity or facility that employs either Plaintiff at the time of the acquisition or affiliation, then Plaintiff will have the same rights as any other employee.

7. *Receipt of Employment Benefits*. Upon receipt of the payment in Paragraph 4, Plaintiff will have been paid in full for all hours that he alleges that he worked for the Defendants including all overtime, and will have received all of the wages, payments, vacation, wage statements, leaves of absence, meal and rest breaks, and other rights and benefits to which he was entitled under federal, state, and local law, including the Fair Labor Standards Act, as amended (29 U.S.C. § 201 et seq.); the Uniformed Services Employment and Reemployment Act, as amended (38 U.S.C. § 4301 et seq.); and all state and local laws of similar effect. Upon receipt of the payment in Paragraph 4, neither the Defendants nor any other Releasee will owe Plaintiff anything for any unpaid wages, overtime, or accrued and unused vacation time. Plaintiff has received reimbursement for all expenses that he incurred as part of the activities he performed with the Defendants.

8. *Dismissal of Action with Prejudice*. Plaintiff filed a Complaint in the United States District Court, Southern District of Ohio, Eastern Division, Case No. 2:19-CV-5653 (the "Complaint"), which Plaintiff releases as part of this Agreement. Not including the Complaint, Plaintiff represents and warrants that he has not filed any other complaints, charges, or lawsuits against the Defendants or any of the other Releasees.

9. *No New Legal Proceedings*. Plaintiff and the Defendants agree not to file any new lawsuits or claims against each other or any of the other Releasees based on any claim they are releasing in this Agreement.

10. *Administrative Proceedings*. Notwithstanding any other provision of this Agreement, Plaintiff remains free to file administrative charges or complaints with government agencies, such as the Equal Employment Opportunity Commission and the National Labor Relations Board, and remains free to participate in investigations and proceedings being conducted by those agencies. However, except where prohibited by law, Plaintiff gives up his right to recover damages or any other type of relief that such an agency might obtain on his behalf.

11. *Medicare and the MMSEA*.

(a). **Definitions.**

(i). "Conditional Payments" shall have the meaning ascribed to it under the MSP Statute and implementing regulations.

Case: 2:19-cv-05653-SDM-CMV Doc #: 9-1 Filed: 04/27/20 Page: 5 of 7  PAGEID #: 73

**Settlement Agreement and General Release**
**Richard Norris and Daniel Dillon/Nightingale Ventures, Ltd./Swan Lake Event Center, LLC**
**Page 5 of 7**

(ii). "MMSEA" means the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173), which, in part, amended the Medicare Secondary Payer statute at 42 U.S.C. § 1395y(b)(7) and (8). This portion of MMSEA is referred to herein as "Section 111 of MMSEA".

(iii). "MSP Statute" means the Medicare Secondary Payer ("MSP") statute. 42 U.S.C. § 1395y(b).

(iv). "Released Matter" means any released accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to the Agreement and releases provided herein.

**(b). Medicare Status and Satisfaction of any Medicare Reimbursement Obligations.** Norris represents and warrants that he is a Medicaid beneficiary. Norris further represents and warrants that he has not received Medicaid benefits for medical services or items related to, arising from, or in connection with the Released Matters and that no other liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from Norris or related to any Released Matters. Norris agrees to release as part of this Agreement any right to bring any possible future action under the MSP Statute against Defendants. Norris further agrees that he, and not Defendants, shall be responsible for satisfying all such Medicare-related liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

**(c). Future Medical Expenses.** In the event that any expenses arising from or related to any Released Matters subject to this Settlement Agreement (including but not limited to any expenses for medical services or items) are paid by Medicaid after the date of this Settlement Agreement ("future medical expenses"), Norris acknowledges and agrees that it is Norris's responsibility, and not the responsibility of Defendants, to reimburse Medicare or Medicaid for such payments, if applicable. The release given by Norris under this Agreement therefore extends to any and all future medical expenses of Norris.

**(d). Indemnification.** To the extent that Norris's representations and warranties related to his Medicare and/or Medicaid status and receipt of medical services and items related to the Released Matters are inaccurate, not current, or misleading, Norris agrees to indemnify and hold harmless Defendants from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character related to Norris's Medicare or Medicaid status and receipt of medical services that have been or may in the future be asserted by Medicare or Medicaid and/or persons or entities acting on behalf of either program, or any other person or entity, arising from or related to Norris's Medicare or Medicaid status and receipt of medical services, including but not limited to: (i) all claims and demands for reimbursement of Conditional Payments or for damages or double damages based upon any failure to reimburse Medicaid or Medicare for Conditional Payments; (ii) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of Section 111 of MMSEA that is based in whole or in part upon late, inaccurate, or inadequate information provided to Defendants by Norris or upon any failure of Norris to provide information; and (iii) all Medicaid or Medicare liens. This indemnification obligation includes all damages, double damages, fines, penalties,

**Settlement Agreement and General Release**
**Richard Norris and Daniel Dillon/Nightingale Ventures, Ltd./Swan Lake Event Center, LLC**
**Page 6 of 7**

attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of Defendants in connection with such claims, demands, subrogated interests, or causes of action related to Norris's Medicare and/or Medicaid status and receipt of medical services. Regardless of the accuracy of the representations and warranties made above, Norris agrees to indemnify and hold Defendants harmless for taxes on payments made and any tax consequences related to Norris's Medicare or Medicaid status and receipt of medical services, except those prohibited by law.

   **12.**   *Plaintiff Has Not Sold or Assigned Any Claims*.  Plaintiff is the sole legal and equitable owner of all of the rights, claims, and causes of action that he releases in this Agreement.  Plaintiff has not assigned, sold, transferred, or encumbered any of these rights, claims, and causes of action to anyone else.  Plaintiff understands that the Defendants are relying on Plaintiff's representations in making their own decisions to enter into this Agreement.

   **13.**   *No Admission of Wrongdoing*.  Plaintiff understands that the Defendants are not admitting any wrongdoing by signing this Agreement and that nobody should interpret this Agreement as an admission by the Defendants that they did anything wrong or illegal.

   **14.**   *Plaintiff Agrees to Cooperate*.  If a federal, state, or local administrative agency is required to approve this Agreement before it can be effective, Plaintiff agrees to cooperate and perform any act necessary or requested to bring about that approval.

   **15.**   *Mutual Non-Disparagement*.  The Parties also agrees that they will not engage in any conduct or communication, including but not limited to any social media communications which defames the reputation, character or integrity of the other Party and the Releasees.

   **16.**   *Waiver*.  The failure of any Party to require performance by any other Party of any provision of this Agreement shall in no way affect the right to require performance at any time thereafter, nor shall the waiver of a breach of any provision of this Agreement operate as a waiver of any succeeding breach of such provision or as a waiver of the provision itself.  Further, the Parties agree that the delay by any Party in exercising their rights under this Agreement will not operate as a waiver of such rights.

   **17.**   *Governing Law and Forum Selection*.  The provisions of this Agreement shall be governed by, and construed in accordance with, the laws of the State of Ohio.  The Defendants and Plaintiff agree that the proper place to determine rights under this Agreement is before any federal or Ohio court of competent jurisdiction. The parties agree that the United States District Court for the Southern District of Ohio shall retain jurisdiction to enforce the terms of the settlement agreement.

   **18.**   *Jointly Drafted*.  The Parties and their respective lawyers each participated in the drafting of this Agreement.

   **19.**   *Severability and Reformation*.  The Defendants and Plaintiff intend for all of the provisions of this Agreement to be severable and reformable.  If any part of this Agreement is found to be unlawful or unenforceable, the Defendants and Plaintiff want every other part of this Agreement to remain fully valid and enforceable to the maximum extent permitted by law, and

Case: 2:19-cv-05653-SDM-CMV Doc #: 9-1 Filed: 04/27/20 Page: 7 of 7  PAGEID #: 75

**Settlement Agreement and General Release**
**Richard Norris and Daniel Dillon/Nightingale Ventures, Ltd./Swan Lake Event Center, LLC**
**Page 7 of 7**

the Defendants and Plaintiff want the Court to have the power to modify provisions to make them enforceable.

20. *Execution in Counterparts*. The Parties agree that this Agreement may be executed in one or more counterparts, each of which will be deemed an original. The Parties further agree that a signature via facsimile, pdf, or other electronic transmission will be deemed the same as an original.

21. *Headings*. The Headings in this Agreement exist only for the sake of convenience. The Headings do not constitute part of Plaintiff's agreement with the Defendants.

22. *This Document Contains the Parties' Entire Agreement*. The text of this Agreement contains the entire understanding between the Defendants and Plaintiff with respect to the covered subject matters. There are no other agreements, contracts, or promises between them on these subject matters other than those set forth in this Agreement, and this Agreement supersedes all other earlier agreements, contracts, understandings, and promises made between them, whether express or implied. Plaintiff and the Defendants, in making their decision to sign this Agreement, are not relying on any promise that the other party or its employees or agents have made to them, other than the promises that are actually set forth in writing in the text of this document.

**DO NOT SIGN BELOW UNLESS YOU HAVE READ AND UNDERSTAND THIS ENTIRE DOCUMENT AND AGREE TO BE BOUND BY IT.**

My attorney has read this entire Agreement to me and I understand what he has read to me and I agree to be bound by these terms. I indicate my assent to this Agreement by signing below:

*Richard Norris:*

    Signed: _____

    Date Signed:_____

*On behalf of Daniel Dillon, Nightingale Ventures, Ltd., and Swan Lake Event Center, LLC:*

    Signed: _____

    Name: Daniel Dillon

    Print Title: _____

    Date Signed: _____